IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES P. HAGGARTY, et al., | No. C 10-02416 CRB |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |
| v. | |
| WELLS FARGO BANK, N.A. | |
| Defendant. | |

This case stems from the 2009 merger of Wachovia Bank and Wells Fargo. Plaintiffs are former mortgage customers of Wachovia who held adjustable rate mortgages indexed to the 11th District Cost of Funds Index ("COFI"). The COFI represents the weighted average interest rate on deposits paid each month by "Reporting Members." Wachovia was one of the Reporting Members, but Wells Fargo was and is not. When Wells Fargo merged with Wachovia, the COFI shot up 85 basis points because Wachovia's deposits were removed from the weighted average reflected in the COFI. This, in turn, caused Plaintiffs' mortgage loan rates to increase.

Broadly speaking, Plaintiffs contend that Wells Fargo violated various federal and state laws, breached its contracts, and committed fraud when it did not (1) inform its new customers that the COFI would (and did) rise as a result of its merger with Wachovia and/or (2) exercise its discretionary contractual power to peg their interest rates to another index unaffected by the merger.

Defendants move to dismiss for failure to state a claim.

## I.    BACKGROUND[1]

Wachovia was experiencing significant financial problems in 2008, and in a deal brokered by the federal government, Wells Fargo acquired Wachovia by merger in November 2009.  Compl. ¶¶ 23-24.  Wachovia had sold adjustable rate mortgages pegged to the COFI, of which Wachovia was a Reporting Member.  Prior to the merger, the borrowings of COFI Reporting Members totaled approximately $90 billion.  Id. ¶ 35.  After the merger, because Wells Fargo was not a Reporting Member, borrowings reflected in the COFI dropped by approximately 57%, to around $35 billion.  Id.  A further and related consequence of the merger was that the COFI jumped 85 basis points, an unprecedented one-month increase of 66%.  Id. ¶ 38.  This jump occurred at a time when other indexes commonly used to set ARM rates were falling.  Id. ¶ 40.

Wells Fargo new or should have known that its merger with Wachovia would disqualify Wachovia as a COFI Reporting Member and that such disqualification would result in a dramatic increase in the COFI.  Id. ¶ 51.  Despite this knowledge, Wells Fargo did not exercise its discretionary authority to pick another index as a basis for setting the ARM rate or even disclose to former Wachovia customers the impact of the merger on the COFI and their ARM rates.  Id. ¶ 52.  Plaintiffs allege that increased costs to homeowners as a result of the COFI's rise could easily be in excess of $100 million a year.  Id. ¶ 55.

Not only did Wells Fargo not exercise its discretionary contractual authority to select a new index on which to peg Plaintiffs' loans or even disclose the merger's impact on the COFI, but it also allegedly made false and misleading statements to Plaintiffs.  Id. ¶ 60.  For example, website updates in February and October 2010 told Plaintiffs, among other things, that (1) "you'll see very few changes.  Your accounts and services will remain virtually the same"; (2) "we'll keep you informed along the way"; (3) "[the merger] will not affect the way you do business with Wells Fargo or Wachovia"; (4) "[you] will receive

---

[1] As this matter comes before the Court on a motion to dismiss, the facts are presented in the light most favorable to Plaintiffs.

2

communications about accounts or services in advance of any change [caused by the acquisition]"; (5) "successful loan conversion brings new benefits"; and (6) "Loan terms and conditions have not changed." Id. ¶ 67-70; 74-77.

Plaintiffs filed a class action complaint in this Court on June 1, 2010. Wells Fargo moved to dismiss that complaint on July 15, 2010. The parties agreed that Wells Fargo would take its motion off-calendar to allow Plaintiffs to file an amended class action complaint. The amended class action complaint was filed on November 5, 2010, and asserts claims for violation of the Truth in Lending Act ("TILA") and federal regulations, breach of contract, fraud, negligent misrepresentation, and deceptive and unfair trade practices under South Dakota and California law. Wells Fargo has once again moved to dismiss, and the matter is now ripe for disposition.

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. Dismissal may be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). For purposes of evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). The complaint must plead "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). That requirement is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inferences that the defendant is liable for the misconduct alleged." Id.

## III.   DISCUSSION

### A.   Plaintiffs Have Stated a Breach of Contract Claim

Plaintiffs' contract with Wells Fargo included a provision providing, in part, as follows:

3

> If the Index or any Index previously substituted under this Section 3F is no longer available, or is otherwise unpublished <u>or at the Lender's sole discretion is determined to be substantially recalculated</u>, the Lender <u>may</u> choose a new index.

Compl. Ex. 6 ¶ 3(F) (Alternative Index) (emphasis added).

Plaintiffs' breach of contract claim concerns whether Wells Fargo exercised its contractual discretionary authority in good faith. <u>Taheny v. Wells Fargo Bank, N.A.</u>, No. CIV. S-10-2123 LKK/EFB, 2010 WL 5394315, at *8 (E.D. Cal. Dec. 22, 2010) ("Under California law, every contract carries with it an implied covenant of good faith and fair dealing.  This duty requires contracting parties to exercise discretion given to them under the contract in a way consistent with the parties' expectations at the time of contracting.  A party breaches this duty when it acts in a way that deprives another contracting party of benefits conferred by the contract.") (citations omitted).

Wells Fargo argues that the contractual provision providing for the selection of a new index was not triggered because "the addition and subtraction of entities in the [COFI] did not amount to a *recalculation*; rather, the *variables* in the calculation changed." Mot. to Dismiss at 5.  This argument is too clever by half, and it is difficult to believe that a 66% <u>drop</u> in the COFI caused by a single, determinable event disconnected from the rest of the market would not have induced Wells Fargo to exercise its discretionary authority under section 3F to select a new index.  Moreover, whether the implied covenant of good faith has been breached is typically a question of fact. <u>Hicks v. E.T. Legg & Assocs.</u>, 89 Cal. App. 4th 496, 509 (2001) ("The issue of whether the implied covenant of good faith and fair dealing has been breached is ordinarily a question of fact unless only one inference [can] be drawn from the evidence.") (internal quotations and citations omitted) (alternation in original).

Accordingly, Defendant's motion to dismiss the breach of contract claim is DENIED to the extent the claim is based on a breach of section 3F and the associated implied covenant of good faith and fair dealing.

//
//
//

4

### B.   Plaintiffs Have Not Pleaded a TILA Claim

The problem with Plaintiffs' TILA claim is straightforward: TILA applies to pre-consummation disclosures, which are not at issue here.  Indeed, Plaintiffs do not cite any cases in which a court has applied TILA in a situation like the one at bar.

TILA requires certain disclosures before a loan closes.  See 15 U.S.C. § 1639.  As a general matter, such disclosures must occur "not less than 3 business days prior to consummation of the transaction."  Id. § 1639(b)(1).  Plaintiffs' base their argument that new disclosures were required on section 1639(b)(2), which requires new disclosures if a creditor changes the terms of credit.  But that section, even if it could operate after a loan closes, is inapplicable here because Wells Fargo did not change a term of credit in Plaintiffs' loans.  Assuming *arguendo* that the merger caused the initial disclosures to be inaccurate, such post-consummation "act" or "occurrence" does not give rise to liability.  15 U.S.C. § 1634; see also Bone v. Hibernia Bank, 493 F.2d 135, 140-41 (9th Cir. 1974).

### C.   Plaintiffs Have Not Stated a Claim under Regulation Z (12 C.F.R. § 226.20)

Regulation Z, 12 C.F.R. § 226.20(c), provides in part that "[a]n adjustment to the interest rate with or without a corresponding adjustment to the payment in a variable-rate transaction subject to § 226.19(b) is an event requiring new disclosures to the consumer."  Plaintiffs concede that "an interest rate increase to a disclosed index [] does not create a new transaction as a matter of law."  Opp'n to Mot. to Dismiss at 14; see also Hubbard v. Fidelity Fed. Bank, 824 F. Supp. 909, 919 n.13 (C.D. Cal. 1993).  They attempt to get around this legal obstacle by asserting that the removal of Wachovia from the COFI and the corresponding rise in the index "effectively result[ed] in a new index" requiring a new disclosure.  Id.  This argument is not compelling.  The index never changed from the COFI, and the way the COFI was calculated also did not change.

### D.   Plaintiffs Have Not Stated a Claim Pursuant to 12 C.F.R. § 34.22(a)

Section 34.22(a) provides that an index must be (1) readily available to and verifiable by the borrower and (2) beyond the control of the bank.  Plaintiffs argue that Wells Fargo has run afoul of this section because it effectively controlled the COFI when it merged with

5

1 Wachovia and the merger resulted in an unprecedented rise in the index. Wells Fargo
2 responds to this argument in two ways. First, it asserts that section 34.22(a) does not provide
3 a private right of action. Second, it asserts that, as a matter of law, it did not and does not
4 control the COFI.

5     Even if a private right of action exists, Plaintiffs have not stated a claim under section
6 34.22. Wells Fargo does not control the COFI simply because its merger with Wells Fargo
7 caused the index to rise significantly. Wells Fargo does not set the standards for which
8 institutions are included in the COFI or how the rates are calculated based on the institutions
9 that are included. The merger was a one-time event in response to a severe financial crisis.
10 See generally Compl. It clearly impacted the COFI, but it did not give Wells Fargo control
11 over it.

### E. The State Law Claims are Preempted in Whole or in Part

13     As a threshold matter, the parties' dispute what federal law is relevant for the
14 preemption analysis. Defendants argue that Plaintiffs' state law claims are preempted by the
15 Home Owners Loan Act ("HOLA") and/or the National Banking Act ("NBA"). See 12
16 C.F.R. § 34.4(a); 12 C.F.R. § 560.2(b). Plaintiffs assert that HOLA does not apply because
17 Wells Fargo is a "national bank" whose dealings are governed exclusively by the NBA.
18 Further, Plaintiffs argue that the NBA does not preempt their state law claims because they
19 are of "general applicability." Opp'n to Mot. to Dismiss at 2-5.

20     It appears that HOLA does apply because Plaintiffs' loan originator was a federal
21 savings bank. "Where a national association, such as Defendant, acquires the loan of a
22 federal savings bank, it is proper to apply preemption under HOLA." Guerrero v. Wells
23 Fargo Bank, N.A., Case No. CV 10-5095-VBF(AJWx), 2010 U.S. Dist. LEXIS 96261, at *8
24 (C.D. Cal. Sept. 14, 2010). This is true even though the conduct at issue occurred after Wells
25 Fargo merged with Wachovia. DeLeon v. Wells Fargo Bank, N.A., Case Number CV
26 10-01390 JF (HRL), 2010 U.S. Dist. LEXIS 62499, at *17 (N.D. Cal. June 9, 2010) ("Wells
27 Fargo notes that at the time the loan was made to the DeLeons, 'World Savings Bank, FSB
28 was a federally chartered savings bank organized and operating under HOLA' and observes

6

1 correctly that the same preemption analysis would apply to any alleged conduct after
2 November 1, 2009, when the lender merged into a national banking association.").

A preemption analysis under HOLA proceeds first by determining whether the law at issue is one specifically preempted by 12 C.F.R. § 560.2(b). See also, Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001, 1005 (9th Cir. 2008). Among those laws specifically preempted are those affecting (1) "**[t]he terms of credit**, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan"; (2) "**[d]isclosure and advertising**, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicant"; (3) "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." 12 C.F.R. 560.2(b)(4), (9), and (10) (emphasis added).[2]

If the law at issue falls into one of the enumerated categories, then it is preempted. Silvas, 514 F.3d at 1005. If it does not fall into one of the enumerated categories but affects lending, a presumption of preemption arises that is reversed only "if the law can clearly be shown to fit within the confines of paragraph (c) [of section 560.2]." Id. Section 560.2(c) excepts from preemption "[s]tate laws . . . that only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) . . . ."

---

[2] Even if the NBA applies rather than HOLA, it also expressly preempts state laws "concerning" "[t]he terms of credit" and "disclosure and advertising[.]" 12 C.F.R. § 34.4(a) (4) and (9). The Court does not believe a different outcome would result from analyzing preemption pursuant to the NBA.

7

Plaintiffs' fraud and misrepresentation claims and the South Dakota deceptive practices claim are preempted by HOLA.[3] The core of these claims is that Wells Fargo should have disclosed the impact of the merger to them and/or that Wells Fargo actively misled them about the merger's impact. These claims relate directly to "disclosure" and are thus preempted. 12 C.F.R. § 560.2(b).

Plaintiffs' unfair practices claims pursuant to California law is premised on the notion that it was unlawful, unfair, or fraudulent not to (1) select a new index or (2) at least inform Plaintiffs of what happened to the COFI as a result of the merger. Cal. Bus. & Prof. Code § 17200 (the "UCL"). As discussed above, the state law fraud and misrepresentation claims are preempted, and Plaintiffs have not stated a claim for a violation of federal law in connection with Wells Fargo's disclosures (or lack thereof) regarding the merger. Thus, to the extent Plaintiffs are attempting to use California's unfair practices laws to impose an obligation on Wells Fargo to issue disclosures or mitigate the impact of COFI's rise such claims are, as a general matter, preempted.

The question then becomes whether Plaintiffs can use the UCL to assert a non-preempted claim of unfair practices based on Wells Fargo's failure to select an alternate index pursuant to section 3F of the parties' contracts. In the Court's view, they can.

Independent of the preemption analysis, the UCL provides a right of action for any "unlawful, unfair or fraudulent business act or practice." Id. A business practice may be "unfair . . . in violation of the UCL even if the practice does not violate any law." Olszewski v. Scripps Health, 30 Cal.4th 798, 827, (2003). An unfair business practice is "one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." McDonald v. Coldwell Banker, 543 F.3d 498, 506 (9th Cir. 2008); Glenn K. Jackson Inc. v. Roe, 273 F.3d 1192, 1203 (9th Cir. 2001). Plaintiffs have stated a UCL claim of unfair practices via their allegation of a

---

[3] South Dakota's deceptive practices law liability for "any person to: Knowingly and intentionally . . . employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise." SDCL § 37-24-6(1); Brookings Mun. Utils., Inc. v. Amoco Chem. Co., 103 F. Supp. 2d 1169, 1177-79 (D.S.D. 2000).

8

contractual breach of the implied covenant of good faith and fair dealing in section 3F.  See Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1152 (9th Cir. 2008); see generally McDonald v. Coldwell Banker, 543 F.3d 498, 506 (9th Cir. 2008); Glenn K. Jackson Inc. v. Roe, 273 F.3d 1192, 1203 (9th Cir. 2001) (unfair business practices include those that are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers); In re Facebook PPC Advertising Litig., Nos. 5:09-cv-03043-JF, 5:09-cv-03519-JF, 5:09-cv-03430-JF, 2010 WL 3341062, at *11 (N.D. Cal. Aug. 25, 2010) ("[A] systematic breach of contract may be an unfair business practice.").

      Moreover, this UCL claim is not preempted because the breach of contract claim upon which it is premised is not preempted.  That is the case because the breach of contract claim uses state law only as a mechanism to enforce the parties' agreement, not as an independent basis for the imposition or new or different obligations on Wells Fargo.  See, e.g., Davis v. Chase Bank U.S.A., N.A., 650 F. Supp. 2d 1073, 1086 (C.D. Cal. 2009) (holding breach of contract claim not preempted; noting that such a claim would "have at most an incidental effect on the exercise of Chase's lending powers . . . [because s]uch a claim does not seek to force Chase to set its contracts in a certain way, but rather merely to adhere to the contracts it does create.") (emphasis in original); Reyes v. Downey Savings and Loan Ass'n, F.A., 541 F. Supp. 2d 1108, 1114 (C.D. Cal. 2008) ("[A] law against breach of contract will not be preempted just because the contract relates to loan activity."); McAnaney v. Astoria Financial Corp., 665 F. Supp. 2d 132, 164 (E.D.N.Y. 2009) ("The breach of contract claim . . . does not seek to impose specific substantive requirements upon the operations of defendants, apart from compliance with specific contractual obligations.").

//
//
//
//
//
//

9

## IV.     CONCLUSION

Plaintiffs' claims that (1) Wells Fargo breached the implied covenant of good faith in their contracts by not selecting a new index pursuant to section 3F, (2) violated the UCL because of that breach, and (3) for declaratory relief, survive the instant motion to dismiss. The remaining claims are DISMISSED with prejudice as preempted or for failure to state a claim.

**IT IS SO ORDERED.**



Dated:  February 2, 2011

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE