IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES P. HAGGARTY, ET AL., | No. C 10-02416 CRB |
| Plaintiffs, | **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| WELLS FARGO BANK, N.A. | |
| Defendant. / | |

**INTRODUCTION**

The danger with adjustable rate mortgages is that they are aptly named–the interest rates adjust. Sometimes they go up, sometimes they go down; sometimes a little, and sometimes a lot. Plaintiffs here entered into two such mortgages, and when the rates adjusted–up, a lot–they sued, arguing that their contracts with Wells Fargo required the bank to abandon the index to which the mortgage rates were tied, and to select a new index, in response to the unprecedented rate jump. But the notes required no such thing, and Plaintiffs' attempt to graft such a requirement on through the implied covenant of good faith and fair dealing fails as a matter of law on both preemption and contract interpretation grounds.

**I.    BACKGROUND**

Plaintiffs Charles and Gina Haggarty entered into Adjustable Rate Mortgage ("ARM") Notes with World Savings Bank, FSB ("World"), on April 17, 2000, and March

20, 2001. Exs. 5, 6 to FAC (dkt. 22) (the "Notes"). Generally speaking, the interest rate of an ARM note is pegged to an identified index, plus some fixed "margin" rate added by the bank, and so the borrower's interest rate fluctuates along with the movement of the index. Garrett Decl. (dkt. 88-2) ¶ 2; Dolan Decl. (dkt. 92-2) ¶ 2. The Notes' interest rate was tied to the Eleventh District Federal Home Loan Bank's Cost of Cost of Funds Index ("COFI"). Notes ¶ 3(d).

The COFI consists of "the monthly weighted average cost of savings, borrowings, and advances of members of [the Federal Home Loan Bank of San Francisco ("Federal S.F.")] as made available by [Federal S.F.]." Notes ¶ 3(d). World was a member of Federal S.F., and so its data was used to calculate COFI. Garrett Decl. ¶ 3. After the execution of the Notes, Wachovia acquired World, and its mortgage business was renamed Wachovia Mortgage FSB, which continued to contribute its data to COFI. Dolan Decl. ¶¶ 8-9; Hartzog Decl. (dkt. 112-1 ) ¶ 11.

Wells Fargo acquired Wachovia in December 2008. Hartzog Decl. ¶ 12. In November 2009, Wells Fargo merged Wachovia Mortgage FSB into Wells Fargo Bank, N.A., which removed Wachovia Mortgage from membership in Federal S.F. for purposes of calculating COFI. Id. As a result, COFI increased by 83.5 basis points from 1.259 to 2.094—a 66% increase, and the largest one-month change in its history. Id. ¶ 40; Garrett Decl. ¶ 7.

A provision in the Notes provided that

> if the Index or any Index previously substituted under this Section 3(F) is no longer available, or is otherwise unpublished <u>or at Lender's sole discretion is determined to be substantially recalculated, the Lender may choose a new Index</u>. The Lender will give me notice of its choice.

Notes ¶ 3(f) (emphasis added). Wells Fargo did not substitute a new index, and Plaintiffs' loan interest rates increased substantially in February 2010 in response to the jump in COFI.

Plaintiffs brought this putative class action suit against Wells Fargo in June 2010, arguing in relevant part that the bank breached an implied covenant of good faith and fair dealing by failing to substitute a new index under the Notes' "substantial recalculation" clause in Paragraph 3(f). See FAC at 23 (breach of contract), 29 (unfair business practice,

2

Cal. Bus. & Prof. Code § 17200 *et seq*.). Plaintiffs' other causes of action were dismissed with prejudice. See dkt. 33. A motion for class certification remains pending. See dkt. 88.

Wells Fargo has moved for judgment on the pleadings (dkt. 69) and summary judgment (dkt. 92), asserting essentially the same arguments in both motions: (1) the change in the monthly reported value of the COFI Index in November 2009 was not a "recalculation" within the meaning of the Notes; (2) both remaining claims are preempted by federal law; (3) Plaintiffs' interpretation is foreclosed by the plain language of the Notes; (4) under California law, a contract reserving "sole discretion" to one party is not subject to the implied covenant of good faith and fair dealing regarding that discretionary decision; and (5) the Notes limited the remedies available to Plaintiffs, foreclosing these damages and disgorgement claims. The Court finds the second and fourth arguments dispositive, and does not reach the others.

## II.     LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

A principal purpose of the summary judgment procedure "is to isolate and dispose of factually unsupported claims." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Ind. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986). The parties agree that California law governs interpretation of the Notes.

3

## III. DISCUSSION

### A. Federal Preemption

Wells Fargo argues that the Home Owners' Loan Act (HOLA) preempts these claims.[1] Congress enacted HOLA "to charter savings associations under federal law, at a time when record numbers of homes were in default and a staggering number of state-chartered savings associations were insolvent." See Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001, 1004 (9th Cir. 2008). HOLA and the Office of Thrift Supervision (OTS) regulations that interpret it were a "radical and comprehensive response to the inadequacies of the existing state system" and "so pervasive as to leave no room for state regulatory control." Id. (internal quotation marks omitted). The OTS regulations explain that OTS "occupies the entire field of lending regulation for federal savings associations," and establish a framework for determining whether a state law is preempted. See 12 C.F.R. § 560.2(a), (b).

OTS enumerates certain types of state laws that are preempted, including "state laws purporting to impose requirements regarding . . . [t]he terms of credit, including . . . adjustments to the interest rate." 12 C.F.R. § 560.2(b)(4). If the state law—"as applied"—is one of the enumerated types, "the analysis will end there; the law is preempted." Silvas, 514 F.3d at 1005.

If it is not, then the court is to determine "whether the law affects lending." Id. (internal quotation marks omitted). If it does, the law is presumed to be preempted, subject to the exceptions of section 560.2(c). Id. That section provides:

> (c) State laws that are not preempted. State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section:
> (1) Contract and commercial law;
> (2) Real property law;
> (3) Homestead laws specified in 12 U.S.C. § 1462a(f);
> (4) Tort law;
> (5) Criminal law; and
> (6) Any other law that OTS, upon review, finds:
> (i) Furthers a vital state interest; and
> (ii) Either has only an incidental effect on lending operations or is not

---

[1] As discussed in this Court's previous order, HOLA, rather than the National Bank Act (NBA), applies to this case. See dkt. 33 at 6 & n.2.

otherwise contrary to the purposes expressed in paragraph (a) of this section.

12 C.F.R. § 560.2(c). Courts are to focus not on the nature of the cause of action, but on the "functional effect upon lending operations of maintaining the cause of action." See Naulty v. GreenPoint Mortg. Funding, Inc., No. 09–1542, 2009 WL 2870620, at *4 (N.D. Cal. Sept. 3, 2009). "Any doubt should be resolved in favor of preemption." Silvas, 514 F.3d at 1005.[2]

Plaintiffs say their contract and UCL claims are not preempted because they are seeking to use state contract and UCL only to hold Wells Fargo to promises it voluntarily made, and not to impose some additional state law requirements affecting lending. This Court found that argument persuasive in ruling on Wells Fargo's Motion to Dismiss. See dkt. 33 at 9 (citing David v. Charles Bank U.S.A., N.A., 650 F. Supp. 2d 1073, 1086 (C.D. Cal. 2009); Reyes v. Downey Savings & Loan Ass'n, F.A., 541 F. Supp. 2d 1108, 1114 (C.D. Cal. 2008); McAnaney v. Astoria Fin. Corp., 665 F. Supp. 2d 132, 164 (E.D.N.Y. 2009)).

The Court agrees that the distinction highlighted by Plaintiffs remains the critical issue, but now concludes that this case falls on the other side of the line. That the promise at issue involves lending activity and interest rates is not dispositive; if Paragraph 3(f) said that Wells Fargo was obligated to select a new index whenever a substantial recalculation occurred, then Plaintiffs would truly be seeking to enforce the terms of the contract as the parties contemplated them, and Plaintiffs' claims would survive under 12 C.F.R. § 560.2(c)(1).

But that is not what Paragraph 3(f) says. Rather, the Notes as written reserve the decision whether any substantial recalculation has occurred to Wells Fargo's "sole discretion," and say that in the event such a recalculation occurs, Wells Fargo "may"—not "must" —switch indices.

---

[2]The Dodd-Frank Wall Street Reform Act and Consumer Protection Act of 2010, 12 U.S.C. § 5412, provides that HOLA no longer occupies the field in any area of state law and that preemption under HOLA is governed by the conflict preemption standards applicable to national banks. See Davis, 806 F. Supp. 2d at 166 n.5. However, the law did not apply retroactively, id., and so Silvas' field preemption analysis applies to this case.

5

1 Plaintiffs say that under the facts of this case, California's implied covenant of good 2 faith and fair dealing both (1) required Wells Fargo to conclude that a substantial 3 recalculation occurred and (2) effectively transformed the "may" into a "must"—a perfectly 4 legitimate theory.[3] But it is precisely that transformation that HOLA preempts. See Molosky 5 v. Wash. Mut., Inc., 664 F.3d 109, 115 (6th Cir. 2011) ("[P]ermitting breach of contract 6 claims may not be consistent with the purposes of HOLA [where] state contract law 7 interposes unstated or implied terms into a contract.").

8 The case law cited by both parties, to the extent the details of the underlying 9 allegations can be discerned from the opinions, bear this distinction out: where a breach of an 10 express contractual term is itself an unfair business practice or bad faith action, the claims are 11 not preempted. E.g., David, 650 F. Supp. 2d at 1079 (bank allegedly breached promises to 12 provide payment-free and interest-free period); McAnaney, 665 F. Supp. 2d at 164 (bank 13 allegedly demanded fees not permitted under contract); Reyes, 541 F. Supp. 2d at 1111 (bank 14 allegedly breached promises of low fixed rate and application of payments to both interest 15 and principal).

16 However, where implied covenants or UCL are used to gloss or add a contract term 17 and establish a breach or violation in the first place—often where Plaintiffs allege an abuse 18 of some discretion afforded by the contract—the claims are preempted. E.g., Schilke v. 19 Wachovia Mortg., FSB, 758 F. Supp. 2d 549, 556-57 (N.D. Ill. 2010) (bank allegedly abused 20 discretion in force-placing flood insurance); Unlu v. Wells Fargo Bank NA, No. 10-CV- 21 5422-EJD, 2011 WL 6141036, at *5 (N.D. Cal. Dec. 9, 2011) (unpublished) (bank allegedly 22 "failed to exercise discretion properly when enforcing the terms of the contract and violated 23 good faith and fair dealing in setting charges"); Cedeno v. IndyMac Bancorp, Inc., No. 06- 24 CIV-6438-JGK, 2008 WL 3992304, at *8 (S.D.N.Y. 2008) (bank allegedly encouraged

---

[3] See 13 Lord, Williston on Contracts § 38.11 (4th ed. 1993) ("[Implied conditions] have nothing to do with the expressed intention of the parties (although, had they thought about it, they might well have incorporated the condition), but are imposed by the courts to achieve justice or prevent injustice."); cf. In re Sunset Bay Assocs., 944 F.2d 1503, 1515 n.13 (9th Cir. 1991) ("[I]mplied conditions . . . are based on equitable principles which the parties may not even have considered at the time they entered into the agreement.").

6

inflated appraisals).

As applied, Plaintiffs' implied covenant and UCL claims would require Wells Fargo to exercise any discretion it retains over evaluation and selection of ARM indices for the benefit of borrowers, and to switch to more borrower-favorable indices upon the occurrence of a triggering event. But the express terms of the contract do not so require, and Plaintiffs' attempt to use state law to require such a policy regarding "adjustments to the interest rate" runs afoul of 12 C.F.R. § 560.2(b)(4), and cannot be said to be "incidental" to lending under section 560.2(c).

This conclusion is consistent with the purpose of HOLA field preemption: avoiding inconsistent obligations for lenders regarding interest rate adjustments. Unlike contract law's universal requirement that lenders not breach their express promises, the implied covenant of good faith and fair dealing varies significantly in application across jurisdictions. For example, some states require subjective "bad faith" on the part of the defendant–a phrase itself defined differently in different places–while others permit claims for breach of the covenant without a showing of bad faith when a party acts in a commercially unreasonable manner. See generally 23 Lord, Williston on Contracts § 63.22 (4th ed. 2002).

Plaintiffs' breach claim and derivative UCL claim are preempted.

### B. "Sole Discretion" and the Implied Covenant of Good Faith and Fair Dealing

Wells Fargo says that California law is clear that "sole discretion" clauses "eviscerate" the implied covenant of good faith and fair dealing. MSJ at 24 (citing Steiner v. Thexton, 48 Cal. 4th 411, 419-20 (2010); Thrifty Payless, Inc. v. Mariners Mile Gateway, LLC, 185 Cal. App. 4th 1050, 1055, 1064 (Ct. App. 2010); Wolf v. Walt Disney Pictures, 162 Cal. App. 4th 1107, 1121 (Ct. App. 2008)). That overstates matters.

As this Court has previously explained, California recognizes that "sole discretion" clauses and the implied covenant are in tension:

> On the one hand, the covenant of good faith finds particular application in situations where one party is vested with a discretionary power affecting the rights of another. Such power must be exercised in good faith. On the other hand, the covenant cannot be read to prohibit a party from doing that which is expressly permitted by agreement. On the contrary, as a general matter,

7

implied terms should never be read to vary express terms.

Gabana Gulf Distrib., Ltd. v. Gap Int'l Sales, Inc., No. 06-02584-CRB, 2008 WL 111223, at *7 (N.D. Cal. Jan. 9, 2008) (internal citations and quotation marks omitted).

Applying those principles, courts commonly distinguish between contracts that give a party "merely the power to exercise discretion," and contracts that give "the greater power to refrain from acting at all," id., which often turns on whether consideration would be illusory if the greater power were given. See Storek & Storek, Inc. v. Citicorp. Real Estate, Inc., 100 Cal. App. 4th, 44, 61 (Ct. App. 2002); Third Story Music, Inc. v. Waits, 41 Cal. App. 4th 798, 808 (Ct. App. 1995).

An example of a discretion clause where the court held that the implied covenant retained some force comes from a construction contract that granted one party discretion in deciding when to build a shopping center. See Best Buy Stores, L.P. v. Manteca Lifestyle Ctr., LLC, --- F. Supp. 2d ---, No. 10-389-WBS-KJN, 2012 WL 929704, at *13-14 (N.D. Cal. Mar. 19, 2012) (party retained discretion to build "at various times and in various phases or sections). The court reached the intuitive conclusion that such a clause did not permit the party to refrain from building the shopping center altogether. See also, e.g., Locke v. Warner Bros., Inc., 57 Cal. App. 4th 354, 367 (Ct. App. 1997); Gabana Gulf, 2008 WL 111223, at *8.

In contrast, in a contract where Disney purchased the rights to the Roger Rabbit franchise and the contract provided that "licenses may be granted by [Disney] . . . as [Disney] may see fit," the court rejected a suit arguing that Disney violated the implied covenant by "purposefully orchestrating [licensing] arrangements for which it received no monetary consideration," because the discretion clause permitted it to do just that, and Disney's promises were supported by adequate consideration independent of the disputed discretionary licensing decision. See Wolf, 162 Cal. App. 4th at 1121; see also Waits, 41 Cal. App. 4th at 808-09; Roots Ready Made Garments v. Gap, Inc., No. C-07-03363-CRB, 2008 WL 4078437, at *8; Vectren Commc'ns Servs. v. City of Alameda, No. C-08-3137-SI, 2009 WL 2566722, at *5-6 (N.D. Cal. Aug. 18, 2009) (unpublished).

8

Here, Plaintiffs received adequate consideration–the loans–regardless of how the Court interprets the "sole discretion" clause, obviating the need to impose artificial limits on the contract's express grant of sweeping discretionary authority. Wells Fargo retained "sole discretion" over the determination whether a substantial recalculation had occurred. Notes ¶ 3(f). That language expressly insulates Wells Fargo from claims that it was required to reach a particular conclusion about whether a "substantial recalculation" occurred, which is exactly what Plaintiffs are arguing here.

True, the Court's reading of the contract would in theory permit Wells Fargo to insist that no substantial recalculation occurred in the face of overwhelming evidence to the contrary, or to refuse to consider the matter at all.[4] Whether some other doctrine (*e.g.*, unconscionability) could provide Plaintiffs with a remedy in such a situation is a question for another case, and anyway "[i]t is not enough to say that without the proposed implied covenant, the contract would be improvident or unwise or would operate unjustly. Parties have the right to make such agreements. [The aggrieved party] was free to accept or reject the bargain offered and cannot look to the courts to amend the terms that prove unsatisfactory." Wolf, 162 Cal. App. 4th at 1122 (quoting Waits, 41 Cal. App. 4th at 809) (citing Storek, 100 Cal. App. 4th at 64).

## IV. CONCLUSION

The Court need not address Wells Fargo's remaining arguments, which may provide additional grounds for summary judgment, in light of the Court's conclusions that (1) Plaintiffs' two remaining claims are preempted by HOLA, and (2) the contracts did not require Wells Fargo to reach any particular conclusion about whether a "substantial recalculation" occurred, and the implied covenant of good faith and fair dealing does not override that express grant of plenary discretion.

---

[4] Plaintiffs argue that Wells Fargo in fact refused to consider the issue at all, Opp'n at 3, but they cite to deposition testimony indicating only that Wells Fargo did not attempt to determine ahead of time whether removing Wachovia Mortgage from Federal S.F. would result in a "substantial recalculation." The briefing on this motion demonstrates that Wells Fargo has since considered the issue and taken the position that no such recalculation actually occurred.

9

1    Accordingly, the Court GRANTS Wells Fargo's motion for summary judgment.  The
2 pending motions for judgment on the pleadings (dkt. 69), class certification (dkt. 88), leave
3 to file under seal (dkt. 89), intervention (dkt. 119), continuation of the class certification
4 hearing (dkt. 154),  and exclusion of a declaration (dkt. 116) are DENIED AS MOOT.
5    **IT IS SO ORDERED.**

8   Dated: October 3, 2012                                CHARLES  R. BREYER
                                                         UNITED STATES DISTRICT JUDGE